IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 14-cv-01858-WJM-BNB

COLORADO HOSPITALITY SERVICE, INC., HOTEL GOLD CROWN, a Colorado company,

Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

Defendant.

_____

**ORDER**

_____

This matter arises on defendant's **Motion for Entry of Protective Order** [Doc. # 24]

(the "Motion for Protective Order"), which is GRANTED IN PART and DENIED IN PART.

This case concerns an insurance claim by the plaintiff for hail damage to its hotel

property.  In particular, the plaintiff alleges:

> Plaintiff purchased a commercial property insurance (the "Policy")
> from Auto-Owners to insure the hotel.  This policy was in effect on
> the date of the hail storm June 6, 2012.  Under the Policy, Auto-
> Owners agreed to pay for direct physical loss or damage to the
> hotel and other covered items caused by covered causes of loss,
> including loss from hail damage.
>
> On or around June 6, 2012, the hotel was hit by a strong hailstorm.
> The hailstorm damaged the hotel and its outbuildings and related
> structures, including the roofs, skylights, windows, signs, and
> HVAC system.
>
> Plaintiff submitted a claim to Auto-Owners for insurance benefits
> due under the Policy.  Auto-Owners hired an adjuster to adjust the
> loss.  The adjuster found hail damage to the hotel building and
> signs.  The adjuster concluded that the replacement cost for those
> items was $180, 650.82.  Auto Owners issued an initial check to
> Plaintiff for that amount minus depreciation (the "Actual Cash

Value" or "ACV").  Plaintiff did not believe that Auto-Owners had correctly estimated the replacement cost for the damaged property. Plaintiff hired a public adjuster to value the covered loss.  The public adjuster found that the replacement cost for the damaged property was $2,423,627.42.

As of this filing, Auto-Owners has not paid the claim in an amount reflecting all insurance benefits owed.  Plaintiff has brought claims for relief for breach of contract, violation of Colorado Revised Statute § 10-3-1115 and §10-3-1116, and for breach of the covenant of good faith and fair dealing.

Scheduling Order [Doc. # 20] at pp. 2-3.

The Motion for Protective Order has two components.  First, the defendant objects to producing certain documents without a blanket protective order to prevent the public dissemination of materials it asserts contain proprietary information and trade secrets.  As to that, the Motion for Protective Order is granted, and I have entered separately a blanket protective order as requested.

Secondly, the defendant requests a protective order that the discovery not be had with respect to the following requests

9.  All performance goals, plans, objectives, or directives related to claims handling, coverage determinations, leakage, combined ratio, and/or payment of insurance benefits for any adjuster(s), supervisor(s) and third-party representative(s), including but not limited to regional or company goals, involved in the Loss or the Claim from the years 2012 through the present.

10.  All documents related to any claims handling or adjustment-based criteria for compensating, evaluating, promoting, retaining, terminating, or providing bonuses or financial incentives to all persons at Auto-Owners involved with the handling of the Claim and all such personnel with decision-making authority with respect to the Loss and the Claims.

13.  All documents or programs created, developed, adopted, or modified by Auto-Owners, its affiliated company or companies,

2

third-party contractors, or consultants, related to its evaluations or analyses of the impact of first party property insurance claims on Auto-Owners' financial position, profit margins, leakage, leakage tracking, combine ratio, litigation exposure, liability exposure, extra-contractual or bad faith liability exposure, and regulatory compliance from the years 2012 through the present.

14.  All documents related to the strategies, programs, plans, directives, goals, incentives, etc., related to reducing Auto-Owners' combined ratio (the ratio of losses and expenses to premium income) and/or tracking and reducing "leakage", i.e., the measurement of the amount of overpayments or underpayment on a claim, which were in place at Auto-Owners from 2012 to the present.

15.  All reports, strategic plans, advisory memoranda, or recommendations provided by any person or entity engaged by Auto-Owners and/or any affiliated company for the purpose, in whole or in part, of providing to Auto-Owners or affiliated companies consulting services, advice, counsel, evaluations, and/or recommendations concerning or relating to first party property insurance claims for the years 2010 through the present.

In support of this request, the defendant has submitted the Affidavit of Amy Brugam,

Esq. [Doc. # 24-2] (the "Brugam Aff."), which states in part:

[S]ome of the requests are either incomprehensible, such that we would not be able to produce responsive documents--such as requests nos. 9, 14 (in part) and 15--and other requests are so confidential and proprietary to our business that dissemination, even for use in this litigation would only serve to annoy, embarrass, oppress, or cause undue burden or expense that we oppose production under any circumstances--such as requests nos. 10, 13 and 14 (in part). . . .

Id. at ¶5.  The defendant also argues:

These documents have little, if any, relevance to Plaintiff's claim alleging that on June 6, 2012, Plaintiff's hotel was hit by a hailstorm, which allegedly caused property damage, a claim which Auto-Owners disputes, or the Auto-Owners acted in bad faith in denying Plaintiff's claim after an independent professional investigated the premises and the claim and opined that Plaintiff's

> property did not sustain any damage to the property, and to the
> extent that any property damage was present, it was due to a
> number of other causes, such as wear and tear, construction and
> design defects, and other causes for which no coverage existed.

Motion for Protective Order [Doc. # 24] at ¶6.

The production requests are difficult to understand.  They appear, however, to seek documents demonstrating that the defendant instructed its adjusters and others working with its adjusters to consider the economic impact of a claim on the company's profitability.  For example, Production Request 10 calls for "documents related to any claims handling or adjustment-based criteria for compensating, evaluating, promoting, retaining, terminating, or providing bonuses or financial incentives to all persons at Auto-Owners involved with the handling of the Claim and all such personnel with decision-making authority with respect to the Loss and the Claims."  It is possible that such documents exist.  An insurance company might instruct its adjusters that their compensation, particularly bonuses, are determined by the value of the claims they successfully reject.  Similarly, an insurance company might set as its goal the rejection of a certain percentage of claims.  If such documents exist, they would be relevant to the plaintiff's claims.

The plaintiff also requests certain "reports, strategic plans, advisory memoranda, or recommendations," whether or not they were adopted or put into effect.  Plans considered but never implemented are neither relevant to the claims and defenses in the case nor reasonably calculated to lead to the discovery of admissible evidence.

I find that the documents responsive to Production Requests 9 and 10 are relevant to the claims and defenses in the case or are reasonably calculated to lead to the discovery of admissible evidence and are discoverable.  The documents responsive to Production Requests

13, 14, and 15 do not appear to be relevant.

I am not persuaded that the documents responsive to Production Requests 9 and 10 are so sensitive that they cannot be produced under the terms of a protective order.  The only evidence offered in support of that claim is the conclusory statement in the Brugam Affidavit that "other requests are so confidential and proprietary to our business that dissemination, even for use in this litigation would only serve to annoy, embarrass, oppress, or cause undue burden or expense."  Brugam Aff. [Doc. # 24-2] at ¶5.  There is no meaningful explanation about why the information is so extremely confidential.

IT IS ORDERED:

(1)     The Motion for Protective Order [Doc. # 24] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED insofar as it seeks the entry of a blanket protective order to protect the public disclosure of confidential and proprietary information.  A protective order to accomplish this goal has been entered separately;

• GRANTED with respect to Production Requests 13, 14, and 15, and that discovery shall not be had; and

• DENIED in all other respects.

(2)     The defendant shall produce all documents responsive to Production Requests 9 and 10 on or before February 9, 2015.

Dated January 28, 2015.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge